An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-763

Filed 6 May 2026

Orange County, No. 24CVD500083-670

KAREN McKENZIE, Plaintiff,

v.

LEROY McKENZIE, Defendant.

Appeal by Defendant from order entered 17 February 2025 by Judge Joal Hall Broun in Orange County District Court. Heard in the Court of Appeals 26 February 2026.

> *Karen McKenzie, pro se, as Plaintiff–Appellee.*

> *Law Office of Matthew Charles Suczynski, PLLC, by Matthew C. Suczynski, for Defendant–Appellant.*

MURRY, Judge.

Leroy McKenzie (Defendant) appeals the trial court's denial of his motion to continue and entry of a domestic-violence protective order (DVPO) against him. Defendant argues that the trial court erred by denying his motion to continue the DVPO hearing based on pending criminal charges arising from the same alleged incident and by entering a one-year DVPO where no competent evidence supported

the trial court's ultimate findings. For the following reasons, we affirm the trial court's order.

## I.    Background

The challenged DVPO arises out of an incident on 16 March 2024, during which Defendant pushed Karen McKenzie (Plaintiff) aside when Plaintiff witnessed him "choking their daughter" (Daughter) in a headlock and tried to intervene. (Quotation modified). On 1 April 2024, Plaintiff filed a verified complaint and motion for a DVPO, alleging that Defendant "has attempted to cause or has intentionally caused [her] bodily injury; or has placed her or a member of her family or household in fear of imminent serious bodily injury or in fear of continued harassment that rises to such a level as to inflict substantial emotional distress" and "has attempted to cause or intentionally caused bodily injury to the child[ren] living with" her. (Quotation modified.) That same day, the trial court issued an ex parte DVPO.

After four continuances, this matter came on for a permanent DVPO hearing on 13 February 2025. Defendant moved to continue the proceeding at the outset of the hearing, citing a previously scheduled mediation and pending criminal charges for assault on a female and assault by strangulation arising from the same incident

that caused Plaintiff to file the DVPO complaint.[1] When moving for a continuance, defense counsel stated:

> [W]e are between a rock and a hard place because [Defendant] certainly has the right to defend himself from a DVPO allegation and testify. He also has a right against self-incrimination. And what I don't want to have happen is he is put—forced between those two rights . . . . I'm trying to balance [c]onstitutional rights and also judicial efficiency. So that's the reason why I'm moving to continue the case. I think it's appropriate because I don't think that [Defendant] should be forced to testify.

The trial court denied the motion to continue and proceeded with the hearing. Plaintiff appeared *pro se* and testified to Defendant's physical altercation with Daughter and her own ongoing fear of his domestic-violence history. Defendant testified in his own defense and denied any physical violence against Plaintiff or Daughter. At no point during his testimony did Defendant invoke his Fifth Amendment right against compelled self-incrimination.

On 14 February 2025, the trial court issued a one-year DVPO, finding that Defendant previously attempted to cause bodily injury to Plaintiff, placed Plaintiff and Daughter in fear of imminent serious bodily injury, and placed Plaintiff in fear of continued harassment as to inflict substantial emotional distress. The order incorporated attached findings summarizing the physical altercation between Defendant and Daughter on 16 March 2024, noting that "Defendant put Daughter in

---

[1]    The record fails to include charging instruments for either offense.

a headlock" and "pushed Plaintiff" as she "was trying to separate the two." (Quotation modified.) The trial court also found that Plaintiff was a "victim of past abuse" and "scared when in her car" that Defendant would "come up behind her and continue the abuse." It also noted that "the trial court had an opportunity to judge the credibility of the witnesses and believes that [Plaintiff] continues to fear additional abuse from Defendant." (Quotation modified.) The trial court found that Defendant did not respond to Plaintiff's question of whether "he had a history of domestic violence against her," thus giving it "doubts about whether he testified truthfully during the hearing." (Quotation modified.) It concluded that Defendant "committed acts of domestic violence against" Plaintiff and ordered him not to "assault, threaten, abuse, follow, harass . . . or interfere with" Plaintiff and not to "threaten a member of [her] family or household." Defendant timely appealed.

## II.    Jurisdiction

As a threshold matter, Defendant's DVPO expired on 16 February 2024 during the pendency of this appeal. This expiration would ordinarily compel the dismissal of this appeal as moot because "the underlying controversy [has] cease[d] to exist." *In re Hatley*, 291 N.C. 693, 694 (1977). But the order itself implicates "numerous . . . collateral consequences" both legally and personally downstream "of the stigma . . . likely to attach to a person judicially determined to have committed domestic abuse." *Smith ex rel v. Smith*, 145 N.C. App. 434, 437 (2001) (quotation omitted); *accord In re A.K.*, 360 N.C. 449, 452 (2006) (acknowledging "continued justiciability of appeals

involving collateral legal consequences"). Because Defendant's "expired domestic violence order" implicates its possible "consideration . . . by the trial court in any custody action involving Defendant," his appeal is not moot, and we address it accordingly. *Smith*, 145 N.C App. at 436 (citing N.C.G.S. § 50-13.1(a) (1999)).

## III.    Analysis

On appeal, Defendant argues that the trial court erred by denying his motion to continue the DVPO hearing based on pending criminal charges arising from the same alleged incident and by entering a one-year DVPO where no competent evidence supported the ultimate findings of fact. For the following reasons, we disagree with Defendant and affirm the trial court's order.

## A. Motion to Continue

Defendant argues that the trial court's denial of his motion to continue violated his Fifth Amendment right against self-incrimination because it "forced" him to "choose between his Fifth Amendment right and his right to testify and refute his accuser." (Quotation modified). We typically review the denial of a motion to continue for abuse of discretion "unless the denial raises a constitutional issue." *State v. Barkley*, 144 N.C. App. 514, 523 (2001). A trial court's ruling on a continuance "based on a constitutional right . . . becomes a question of law" subject to *de novo* review.[2]

---

[2]    Defendant moved to continue on a constitutional basis by arguing that the hearing would violate his Fifth Amendment rights "to defend himself from a DVPO allegation" and "against self-incrimination." But in his appellate brief, Defendant argues that we must review the trial court's denial only for an abuse of discretion. His brief does not request a *de novo* review as a constitutional

*State v. Gardner*, 322 N.C. 591, 594 (1988). But its denial "is grounds for a new trial *only* upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result." *State v. Branch*, 306 N.C. 101, 104 (1982) (emphasis added). Based on these considerations, we disagree with Defendant.

As incorporated to North Carolina by the Fourteenth Amendment, *see Herndon v. Herndon*, 368 N.C. 826, 829 (2016), the Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V; *accord* N.C. Const. art. I, § 23. This privilege extends to any "proceeding, civil or criminal, formal or informal, where the answers might incriminate [a defendant] in future criminal proceedings." *Debnam v. N.C. Dep't of Corr.*, 334 N.C. 380, 384–85 (1993). But the "Fifth Amendment privilege against compelled self-incrimination is not self-executing"; a defendant must choose to expressly invoke it. *Roberts v. United States*, 445 U.S. 552, 559 (1980); *accord Dunhill Holdings, LLC v. Lindberg*, 282 N.C. App. 36, 73 (2022) ("[I]nvocation of the Fifth Amendment privilege must be express.").

As a result, a defendant "has no absolute right not to be forced to *choose* between testifying in [a civil] matter and asserting his Fifth Amendment privilege." *Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 575 (2023) (emphasis added). While

---

issue. We nonetheless review Defendant's motion for a continuance under the proper standard. *See State v. Coleman*, 254 N.C. App. 497, 501 (applying correct standard of review despite appellant's incorrect citation).

the Fifth Amendment protects a defendant from being compelled to give self-incriminating testimony, it does *not* so protect him from the decision of whether to invoke the privilege, nor does it insulate him from the consequences of the decision to testify in a civil proceeding. *See, e.g.*, *In re Estate of Trogdon*, 330 N.C. 143, 152 (1991). Our Supreme Court recognizes that the right against self-incrimination operates differently depending on whether a witness's testimony is compelled or voluntary. *See Herndon*, 386 N.C. at 830; *Brown v. United States*, 356 U.S. 148, 155 (1958) (distinguishing between compelled and voluntary witnesses). Specifically, a "voluntary witness . . . 'has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, *not to testify at all.*'" *In re L.C.*, 253 N.C. App. 67, 76 (2017) (quoting *Brown*, 356 U.S. at 155); *see Herndon*, 386 N.C. at 831 (defendant taking stand during her case-in-chief in DVPO hearing was considered "voluntary witness" under *Brown* standard).

Defendant has no such constitutional right here. The Fifth Amendment may protect a defendant from being compelled to testify, but it does not shield him from the dilemma of deciding whether to testify in a civil case or invoke the Fifth Amendment privilege, even if doing so would negatively impact the civil case. *See Marlow*, 288 N.C. App. at 575. Thus, the trial court's denial of Defendant's motion to continue was not error, let alone error of constitutional magnitude. In any event, even if Defendant had moved to continue on a valid constitutional basis and the trial court

denied that motion in a manner amounting to constitutional error, Defendant must still show prejudice. *See In re J.E.*, 733 N.C. 285, 291 (2021). Here, Defendant chose to testify about the domestic-violence allegations against him during his case-in-chief. He never indicated that his testimony would incriminate him or that he sought to invoke his Fifth Amendment right. Thus, Defendant voluntarily testified without invoking his Fifth Amendment privilege. *See Herndon*, 386 N.C. at 832 ("We are not aware of . . . any case holding that a trial court infringes upon a witness's Fifth Amendment rights when the witness does not invoke the privilege."). Because Defendant cannot show prejudice, we need not decide whether the trial court's denial was constitutional error. *See State v. Rogers*, 352 N.C. 119, 124 (2000). Accordingly, we hold that the trial court did not err by denying Defendant's motion to continue.

## B. Challenged Findings

Defendant next argues that "the trial court erred in granting" the DVPO because the trial court's "decision is unsupported by reason and is arbitrary." He asserts that the trial court erred in finding that "Defendant committed acts of domestic violence and that there was danger of serious immediate injury to Plaintiff." (Quotation modified.) We disagree.

This Court reviews a trial court's order issuing a DVPO for "whether . . . competent evidence . . . support[s] the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Kennedy v. Morgan*, 221 N.C. App. 219, 221–22 (2012) (quotation omitted). We recognize that the trial court must

determine "which reasonable inferences" to consider "where different reasonable inferences can be drawn from the evidence." *Brandon v. Brandon*, 132 N.C. App. 646, 651 (1999) (quotation omitted). As a result, the trial court's findings "turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court." *Id*. at 652. Where competent evidence supports the trial court's findings of fact, "those findings are binding on appeal." *Burress v. Burress*, 195 N.C. App. 447, 449–50 (2009). Unchallenged findings of fact are "presumed to be supported by competent evidence and binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97 (1991). Furthermore, a "trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding." *In re G.C.*, 384 N.C. 62, 65 (2023).

To enter a DVPO, the trial court must conclude as a matter of law that "an act of domestic violence" occurred. *Kennedy*, 221 N.C. at 223; *see* N.C.G.S. § 50B-3(a) (2025) (corresponding statute). Domestic violence includes any act between parties sharing a "personal relationship" that:

(1) Attempt[s] to cause bodily injury, or intentionally causing bodily injury; or
(2) Plac[es] the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment . . . that rises to such a level as to inflict substantial emotional distress.

N.C.G.S. § 50B-1(a)(1)–(2); *see id*. § 50B-1(b)(1)(3) (defining "personal relationship" as one wherein the parties "are current or former spouses" or "are related as parents

and children"). "While the trial court need not set forth the evidence in detail[,] it does need to make findings of ultimate fact which are supported by the evidence; the findings must identify the basis for the act of domestic violence." *Williams v. Cabrera*, 298 N.C. App. 611, 616 (2025) (citation modified). This Court must affirm a DVPO if the trial court's "findings support at least one act of domestic violence." *Id.*

In challenging the DVPO, Defendant asserts that "no testimony . . . support[s the trial court's ultimate] finding that that Defendant caused or attempted to cause any physical injury or continued harassment, or substantial emotional distress to Plaintiff." Notably, he does not challenge the ultimate finding that Defendant placed Plaintiff and "a member of the plaintiff's family"—*i.e.*, Daughter—"in fear of imminent serious bodily injury." Nor does he specifically challenge any of the trial court's evidentiary findings. Thus, these latter findings bind us on appeal. *See Koufman*, 330 N.C. at 97; *G.C.*, 384 N.C. at 65. Because "the findings support at least one act of domestic violence" and "a single act of domestic violence is sufficient," we must affirm the trial court's order issuing a DVPO. *Williams*, 298 N.C. App. at 616.

## IV.  Conclusion

For the reasons above, we hold the trial court did not err by denying Defendant's motion for a continuance or by entering the DVPO.


AFFIRMED.

Judges HAMPSON and WOOD concur.

Report per Rule 30(e).